F. NORWOOD HALL v. LEE LEVY ET AL.

Decided January 31, 1903.

**Married Woman—Separate Property—Gift from Husband.**

Where the husband, who had insured his life, on the endowment plan, in the wife's favor, received a sum of money in settlement of the policy which he delivered to the wife, and afterwards his firm borrowed the money from her, executing to her a note therefor, which was paid in part by a conveyance of land to her during the marriage, he and the firm being solvent up to that time, there was a gift of the money to the wife, and the land so conveyed to her was her separate estate, and not liable for the husband's debts.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*Potter & Potter,* for appellant.

*Robt. E. Cofer,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Appellees, plaintiffs below, recovered of appellant block 40 in Perry's addition to the city of Gainesville. Their title consisted of a judgment rendered June 29, 1891, in favor of Warren Boot and Shoe Company against D. Baum & Bros., and an execution sale thereunder, with sheriff's deed to them, dated August 5, 1891. Appellant's paper title consisted of deeds from E. P. Bomar and D. T. Lacy to Bertha Baum, wife of D. Baum, made in the year 1899, and a deed to him from Bertha and D. Baum, made November 21, 1900. Recovery was had by appellees upon the ground that the block of land in controversy was the community property of D. Baum and wife, Bertha Baum, when levied on and sold as such, which recovery was resisted by appellant upon the ground that it was the separate property of Bertha Baum. The testimony offered to sustain this defense was that of D. Baum, which, so far as relevant to this issue, was as follows: "Bertha Baum is my wife, and we were married in 1868; soon after I married I took out an insurance policy on my life for $10,-000. In about 1885 or 1886 the company that I took this policy with liquidated. My policy was an endowment policy, and under the laws of New York I had a preference; and in 1885 or 1886 they paid $5000 on my $10,000 policy. The $10,000 policy was made payable to my wife, Bertha Baum. At this time I was in the mercantile business in partnership with my brother, doing business under the firm name of D. Baum & Bros. I turned this $5000 over to my wife. It was her money. Not long afterwards the firm of D. Baum & Bros. borrowed $3400 of this money from her, and gave her a note of D. Baum & Bros. During the year 1888-1889, Captain Ed Morris did business with us, and owed us a balance in 1889 of $450. * * * It was understood and agreed that if Ed Morris would deed us block 40, Perry's addition to the city of Gainesville, that we would mark the store account paid.

At this time D. T. Lack and E. P. Bomar were holding title to this land for Ed Morris, and in 1889 D. T. Lacy and E. P. Bomar each executed a deed conveying lot 40 in Perry's addition to the city of Gainesville to Bertha Baum. We marked the store account paid and entered a credit of $450 on the note that D. Baum & Bros. owed Bertha Baum. * * * At the time this land was deeded to my wife by D. T. Lacy and E. P. Bomar, the firm of D. Baum & Bros. was solvent. We were doing a good business, and we were in good financial shape. We failed in business in 1891. I was solvent from the time I married till 1891. * * * I paid the insurance premiums on this policy out of community property." On cross-examination this witness testified: "The insurance policy I had on my life was a regular twenty-year endowment policy. If I lived for twenty years I was entitled to a settlement under the provisions of said policy in my life time. * * * In 1885 or 1886 the insurance company failed. I succeeded in compromising with the insurance company and got $5000. Part of this money went to buy our homestead, the place where we are now living, and the balance was loaned to the firm of D. Baum & Bro., who gave their note to my wife. This note is now at my home." At this point the statement of facts contains the following, on which much stress seems to be laid by appellees: "Being requested by the court to go and bring the note into court the witness was excused to go and get the note, but the witness did not return again."

The rest of the evidence related to the issue of notice, on which the court found in favor of appellant, that is, that notice was given at execution sale of Bertha Baum's claim before appellees purchased the property, which finding we approve.

The court also found that D. Baum had "had his life insured in favor of Bertha Baum;" that the firm of D. Baum & Bro. had borrowed from Bertha Baum the $5000 paid in liquidation of the insurance policy, and that "in part payment for said indebtedness D. Baum & Bro. caused the deeds from Lacy and Bomar, hereinbefore mentioned, to the land in controversy to be made to said Bertha Baum;" but further found in this connection that "it was not intended to give said land to said Bertha." These findings of fact we also adopt. The court, however, "as matter of law," concluded "that the money realized upon said insurance policy was not the seperate property of Bertha Baum, but that it was community property of said D. Baum and Bertha Baum," and upon this ground rendered judgment for the plaintiffs below. But in this we think there was error.

The court seems to have accepted as credible the testimony of D. Baum, quoted above, which, when so accepted, clearly shows, we think, that the property in controversy was paid for with the separate funds of Bertha Baum. The decision of the case does not depend alone upon the character and effect of the insurance policy; for in addition to having "his life insured in favor of Bertha Baum," as found by the court, D. Baum delivered the proceeds of the liquidated policy to her, and

afterwards borrowed the same from her, executing a note of the firm payable to her, in part payment of which the lot in controversy was conveyed to her.

The insurance fund was thus clearly treated by D. Baum as belonging to his wife long before any rights of creditors intervened, and we see no escape from the conclusion that what he did in the premises amounted to a gift of this fund to her, both principal and interest. Martin-Brown Co. v. Perrill, 77 Texas, 199; Hall v. Hall, 52 Texas, 294.

The judgment is therefore reversed and here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.